UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XOU THAO,<br><br>        Petitioner,<br><br>    v.<br><br>H.B. ANGLEA,<br><br>        Respondent. | No. 2:18-cv-0042-TLN-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He raises two grounds for relief: (1) that he was denied the right to allocute at his sentencing hearing; and (2) that his appellate counsel on direct appeal was constitutionally ineffective in failing to raise the foregoing argument on direct appeal. ECF No. 1 at 5-6.

## BACKGROUND

The following factual background is taken from the California Court of Appeal for the Third Appellate District decision on direct appeal:

> In January 2012, Jakob Stinson and Dennis Faria were delivering newspapers in the Meadowview area of Sacramento around 4:00 a.m. Stinson was driving and Faria was riding in the passenger seat. To speed up the delivery of papers, Faria would roll his window down, sit on the passenger side door, and hold onto the car by putting his hands through the open sunroof.

While near the area of Detroit Boulevard and Meadowview Road, Faria saw a black Lexus IS 300 with blue headlights and yellow fog lights "cruising" around the neighborhood. When Faria first saw the Lexus, it was driving at a normal speed. However, the next time he saw the vehicle, it was driving very slowly towards him. The Lexus pulled up next to Faria and Stinson's vehicle and stopped. The passenger in the Lexus then rolled down his window, climbed onto the door, and fired about six shots at Faria. Faria, who was sitting on the passenger side door, ducked while Stinson sped away. The Lexus chased after Faria and Stinson but did not catch them.

Stinson called 911 and reported the shooting. Sacramento Police Officer John Sallee met with Faria and Stinson and took them to the place where the shooting occurred on the 7600 block of Detroit Boulevard, which is known as the "turf" of the Junior Criminal Crips (JCC) gang. Faria provided a description of the Lexus, the driver, and the passenger. Faria described the driver as "a male Asian adult in his twenties wearing a black shirt with a . . . medium build." Faria described the passenger as "a male Asian adult in his twenties" wearing "a black puffy jacket" with a slightly bigger build than the driver. Faria also told Officer Sallee that he believed the gun used by the shooter was "a small revolver."

Faria identified both the shooter and the driver in photographic lineups, and told police that defendant was the driver of the Lexus. After conducting surveillance, the police learned that the Lexus was located at defendant's house on Detroit Boulevard. During the execution of a search warrant, the police observed defendant hide a loaded .22-caliber revolver under a tarp in his back yard. A search of defendant's bedroom revealed a newspaper article about the shooting that had certain portions underlined, including text indicating that the victims were newspaper carriers. In addition, the time, place, and car believed to be involved in the shooting were circled. The police also found gang graffiti, a CD cover with "JCC" written repeatedly in blue, and a black puffy jacket in defendant's room. The Lexus, which was registered to defendant, was in the garage.

The Lexus was swabbed for gunshot residue. An expert analyzed the results and found 19 gunshot residue particles on the passenger headliner as well as three particles on the interior passenger door. The expert concluded that the gunshot residue could have been the result of a firearm discharged near the vehicle.

To establish that the crimes were gang related, the prosecutor offered the testimony of an expert in Asian gangs, Detective Chris Starr of the Sacramento Police Department. Detective Starr testified as follows: The Junior Criminal Crips is a criminal street gang associated with the Crips. They wear the color blue and predominantly come from the Hmong population. The Junior Criminal Crips gang members sometimes call themselves "criminalz" or "JCC," and they commonly get tattoos in a bamboo font to associate themselves with the gang. JCC gang members also use graffiti and gang signs to identify themselves and to taunt or disrespect their rivals. To join the JCC, a potential member could be part of a certain family, "jumped in" (i.e., beaten by other gang

2

members), or perform a "worthy" criminal act. The primary criminal offenses for JCC gang members are burglaries, car thefts, selling narcotics, shootings, and homicides.

The JCC claim Detroit Boulevard in the Meadowview area as their "turf." JCC gang members sell drugs and keep rivals and strangers away from their turf "to establish a sense of power, a sense of ownership," and to prevent interference with their activities. JCC gang members are known to patrol Detroit Boulevard to intimidate people and assert their power. The 7600 block of Detroit Boulevard is considered the "heart" of the gang's area. Approximately five to 10 gang members or associates live in that area, which is a busy area for gang crimes, including homicides, shootings, and assaults.

According to Detective Starr, JCC gang members wish to be feared because "they equate fear to respect," and they get respect by defending their turf. Detective Starr explained that older gang members influence younger gang members by planning crimes for them. He further explained that gang members usually discuss crimes beforehand to avoid getting caught and/or hurt, and that it is common for younger gang members to seek approval from older members before they commit a crime.

At the time of the shooting, defendant was 21 and the shooter, X.M., was 16. According to Detective Starr, this age difference is significant because it meant that defendant had influence over X.M., a validated member of the JCC. Detective Starr noted that X.M. had known defendant for several years prior to the shooting, and had associated with defendant while with other JCC gang members.

While defendant was not a validated JCC gang member at the time of the shooting, he had a JCC gang tattoo and a picture had been taken of him with other JCC gang members displaying gang signs. Defendant had also been involved in a gang-related fight in November 2010 while he was with other JCC gang members. In addition, in April 2011, defendant was stopped in a vehicle that matched the description of the vehicle involved in a gang-related shooting. At that time, defendant and the driver of the vehicle, a validated JCC gang member, both had a JCC gang tattoo. Further, in July 2011, defendant was observed with JCC gang members on two separate occasions. On one of those occasions, he was with X.M.

According to Detective Starr, gang members will band together to shoot at an unknown car in their neighborhood to protect their turf. He stated that such actions benefit the gang by getting the word out to other gangs that it is "not a good idea to come in that neighborhood."

Based on his conversations with defendant, defendant's tattoos, the people defendant associates with, and defendant's past behavior, Detective Starr concluded that defendant was a member of the JCC. He also concluded that the crimes committed in this case were done for the benefit of the JCC to protect its turf. The prosecution then asked Detective Starr hypothetical questions that closely tracked the facts in this case. Detective Starr noted that he would not be

3

> "surprised" if two gang members agreed to intimidate an unknown car driving in their turf by shooting at them. He also said he would expect the two gang members would have communicated about the shooting before it occurred.
>
> Following a jury trial, defendant was found guilty of one count of willful and malicious discharge of a firearm at an occupied vehicle (count one) and two counts of assault with a firearm (counts two and three). The jury also found true the gang enhancement allegations. (§ 186.22, subd. (b).) The trial court sentenced defendant to an indeterminate term of 15 years to life on count one, plus a determinate term of six years on count two (the middle term of three years, plus three years for the gang enhancement) and two years on count three (one-third the middle term of one year, plus one year for the gang enhancement). The determinate terms on counts two and three were stayed pursuant to section 654.

*People v. Xou Thao*, 2016 Cal. App. Unpub. LEXIS 4395, *1-8 (Cal. Ct. App. Jun. 15, 2016).

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

I. <u>Applicable Statutory Provisions</u>

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). If either prong

/////

(d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of

constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

### A. "Clearly Established Federal Law"

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

### B. "Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

/////

/////

A state court decision is "contrary to" clearly established federal law if the decision

5

"contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[1] because it added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[2] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533 F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[3] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165 66 (2000) (plurality op'n).

   A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] *Faretta v. California*, 422 U.S. 806 (1975).

when they proceed on the basis of factual error. *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 526 28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 909 (2005); *Porter v. McCollum*, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. *Lockyer*, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. *Id.* In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. *Id.* at 948.

Review under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. *Id.* In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." *Id.* at 1399.

Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz*, 533 F.3d at 738 (emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In *Richter*, *supra*, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. *Richter*, 131 S. Ct. at 786.

C. <u>"Unreasonable Determination Of The Facts"</u>

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). For example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief where the Texas court had based its denial of a *Batson* claim on a factual finding that the

7

prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it. *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004). Moreover, if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2). Id. at 1001; accord *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section 2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002) (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

II.     The Relationship Of § 2254(d) To Final Merits Adjudication

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre AEDPA standards. *Frantz v. Hazey*, 533 F.3d 724 (9th Cir.

2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. *Id.* at 736-37. The AEDPA does not require the federal habeas court to adopt any one methodology. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap. Accordingly, "[a] holding on habeas review that a state court error meets the § 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary." *Frantz*, 533 F.3d at 736. In such cases, relief may be granted without further proceedings. *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1) unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis. In such cases, the substantive claim(s) must be separately evaluated under a de novo standard. *Frantz*, 533 F.3d at 737. If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary hearing may be necessary. *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

## DISCUSSION

### I. Petitioner's Claims

As a preliminary matter, respondent argues that petitioner's claims are procedurally defaulted. Specifically, the state superior court that issued the last reasoned decision on his habeas petition noted that petitioner had defaulted on his claims by failing to raise them on direct appeal. Lodg. Doc. 8 at 2. A habeas court will not review a question of federal law if that question has been decided by a state court and the court's decision "rests on a state law ground

that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The Supreme Court has held that "[i]f the state court's decision rested primarily on a ruling on the merits . . . . its decision would not be independent of federal law." *Stewart v. Smith*, 536 U.S. 856, 860 (2002); *see also Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A] federal claimant's procedural default precludes federal habeas review . . . only if the last state court rendering a judgment in the case rests its judgment on the procedural default."). Here, the superior court held:

> First, Petitioner's claims are based on the record and could have been raised on direct appeal. Thus, these claims are procedurally barred. (*In re Dixon, supra*, 41 Cal.2d at 759.) Petitioner claims that his appellate counsel was ineffective for failing to raise the issue on appeal. However, Petitioner fails to make the requisite showing of inadequate performance and prejudice, because the underlying claims have no merit. (*See In re Robbins* (1998) 18 Cal.4th 770, 810 [to establish ineffective assistance of counsel, one must show objectively inadequate performance and resulting prejudice; counsel may properly limit claims to the strongest issues].)
>
> Petitioner claims that he was denied his right to allocution. Petitioner claims that he tried to speak during the sentencing hearing, but was not allowed to address the Court. He does not offer any explanation of what he would have said in allocution. In support of his claim that his mere inability to speak unfairly prejudiced him, he relies upon *People v. Evans* (2008) 44 Cal.4th 590 and Penal Code section 1200.
>
> In *Evans*, the California Supreme Court held that, under Penal Code sections 1200 and 1201, a defendant has a statutory right to state reasons why judgment should not be pronounced at all, but not to state reasons why a more lenient judgment should be pronounced. (*Evans*, *supra*, 44 Cal.4th at 597.) In addition, under section 1204, a defendant does have a statutory right to state why a more lenient judgment should be pronounced, but only under oath and subject to cross-examination. (*Id.* at 598.)
>
> Here, a review of the sentencing transcript attached by Petitioner demonstrates that Petitioner was provided an opportunity to state why judgment should not be pronounced, pursuant to Penal Code sections 1200-1201 and *Evans*. Additionally, during the pronouncement of the sentence, defense counsel did not attempt to call Petitioner to testify, and Petitioner did not ask to do so. Although Petitioner attempted to speak, the record shows that it was to express confusion at the length of his sentence. These circumstances are similar to those in *Evans*, where the Court found defendant had forfeited his right to testify in mitigation. (*See Evans*, supra, 44 Cal.4th at 593, 600 [although defendant unsuccessfully sought the sentencing court's permission to speak, the Court noted that defense counsel made no attempt to call defendant to testify, and defendant himself did not ask to do so, thus forfeiting defendant's right to

10

> testify in mitigation].)
>
> Petitioner also vaguely claims that he did not understand. To the extent Petitioner is arguing that he did not understand the sentencing hearing, he has failed to make the requisite showing he is entitled to judicial relief at this stage. Although the record demonstrates that Petitioner made multiple comments indicating he did not understand something, the record indicates that his source of confusion was as to why he was receiving "such a harsh punishment." While the court is required to impose sentence, defense counsel is charged with understanding, advocating and clarifying possible sentencing choices at the hearing. (*See People v. Scott* (1994) 9 Cal.4th 331, 353.) Here, the record demonstrates that defense counsel discussed the probation report and sentencing with Petitioner and argued on Petitioner's behalf for a mitigated sentence.

Lodg. Doc. 8 at 2. The superior court's decision noted the procedural default, but primarily emphasized the merits of the claim. Thus, the court finds that the state procedural default does not preclude federal review of the claims. Nonetheless, the court finds, for the reasons stated below, that petitioner's claims fail on the merits.

The United States Supreme Court has never recognized a constitutional right to allocute during sentencing. In *Hill v. United States*, the Supreme Court held that:

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.

368 U.S. 424, 428 (1962). And, to the extent petitioner alleges that the denial of an opportunity to allocute violated some principle of state law, no federal relief is available to him based solely on this theory. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that federal habeas relief does not lie for errors of state law). Finally, as the superior court noted in its decision, petitioner has not established that his inability to allocute at his sentencing hearing actually prejudiced him. The failure to make such a showing also renders federal habeas relief unavailable. *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000).

In his traverse (ECF No. 18), petitioner argues that respondent overlooks the fact that he

11

had been appointed a Hmong interpreter during the sentencing hearing to "facilitate [petitioner's] English speaking deficiencies." *Id.* at 2. He claims that, through his interpreter, did ask to address the courtroom and made it known that he did not understand the sentence. *Id.* He cites no section of the record as support for this contention and argues that "[e]ven though the record is silent, it's (sic) silence is precisely why this petition was filed." *Id.* Finally, he acknowledges the Supreme Court's holding in *Hill* and contends that that case applies where a trial court fails to invite allocution from a defendant, not where a defendant repeatedly requests to allocute and is ignored. *Id.* at 3. Petitioner points to a Ninth Circuit case - *Boardman v. Estelle*, 957 F.2d 1523 (9th Cir. 1992) – which held that a state court violated a defendant's due process where it denied him the opportunity to allocute after he requested to do so. His reliance on this case is misplaced, however. *Boardman* was decided prior to the enactment of AEDPA and thus is no longer determinative on this question. After AEDPA, a writ of habeas corpus may issue only where "the state-court adjudication resulted in a decision that (1) was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of … clearly established Federal law, *as determined by the Supreme Court of the United States*." *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (internal quotation marks omitted) (emphasis added). The Ninth Circuit has acknowledged as much, noting that "where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable." *Holley v. Yarborough*, 568 F.3d 1091, 1097-98 (9th Cir. 2009). And petitioner has not pointed to any Supreme Court precedent which echoes *Boardman*, nor is the court aware of any.

Petitioner's claim of ineffective assistance of appellate counsel based on the failure to raise the foregoing allocution claim on direct appeal is also unavailing. The superior court found no error or establishment of prejudice with respect to this claim. And, as noted *supra*, there was no violation of any clearly established federal law. It is well settled that counsel's failure to raise a meritless argument does not amount to ineffective assistance. *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *see also Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (finding that trial counsel committed no error by failing to file a meritless motion to suppress).

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: March 14, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE